150 P.3d 1163 (2007)
Walter J. EBEL and Linda R. Ebel, husband and wife; Dale Norman Gillies and Debra C. Gillies, husband and wife; Sarah Anne S. Holland, a single person; Jeffrey S. Larsen and Mary D. Larsen, husband and wife; Gaylord L. McCabe and Marijo T. McCabe, husband and wife; James F. McClinton and Sara L. McClinton, husband and wife; Anis A. Quidwai and Shaukat T. Quidwai, husband and wife; Ishtiaq A. Quidwai and Rubina Z. Quidwai, husband and wife; and Thomas L. Temte and Myrna L. Temte, husband and wife, Appellants,
v.
FAIRWOOD PARK II HOMEOWNERS' ASSOCIATION, a Washington non-profit corporation, Respondent.
No. 24586-1-III.
Court of Appeals of Washington, Division 3.
January 23, 2007.
*1164 Peter A. Witherspoon, Spokane, WA, for Appellants.
Frederick Joseph Dullanty, Jr., Tracy N. Leroy, Witherspoon, Kelley, Davenport & Toole, Spokane, WA, for Respondent.
KATO, J.
¶ 1 Walter Ebel and others (the Property Owners) sought a declaratory judgment that the Fairwood Park II Homeowners' Association lacked authority and was not properly formed. The court granted the Association's motion for summary judgment dismissal. The Property Owners appeal. We affirm.
¶ 2 The Property Owners own real property located within the Fairwood Park II (Fairwood II) subdivision. Fairwood II is the second phase of the Fairwood Park (Fairwood I) subdivision that was developed in the 1960s.
*1165 ¶ 3 In 1967, the plat for Fairwood I was recorded. The Declaration of Covenants, Conditions and Restrictions (CCRs) was recorded in 1967. These CCRs provided for a formal homeowners' association.
¶ 4 In 1969, the plat for Fairwood II was recorded. This plat referred to a homeowners' association, but no association documents were filed. In 1972, the CCRs for Fairwood II were recorded. The CCRs addressed architectural control, business and commercial uses, temporary structures, animals, signs, fences, and other restrictions. It did not set up a homeowners' association. The CCRs also had an amendment procedure. Up until 1992, 90 percent of the property owners subject to the CCRs had to approve any amendment. Thereafter, only 75 percent of the property owners had to approve an amendment.
¶ 5 According to the son of one of the developers, the two phases were different. Fairwood I was based upon the "Seattle Concept," which included amenities controlled by a formal homeowners' association. Clerk's Papers at 251. Fairwood II was developed without amenities and without a homeowners' association. Fairwood II did, however, have basic covenants.
¶ 6 In 1998, 75 percent of the Fairwood II property owners signed an amendment to the CCRs that established the Association. None of the property owners in this action signed the document.
¶ 7 The Association was incorporated under chapter 24.06 RCW. The Property Owners all paid dues and participated in the Association to varying degrees. But in 2004, they filed an action for declaratory judgment that the Association did not have any authority to act. On cross motions for summary judgment, the court granted the Association's motion and dismissed the action. This appeal follows.
¶ 8 In support of their motions for summary judgment, the Property Owners submitted the affidavit of Michael Meagher, the son of one of the developers, that described facts pertaining to the development of the two phases. The Association's motion to strike portions of the affidavit was granted. The Property Owners claim the court erred by doing so.
¶ 9 A trial court may not consider inadmissible evidence when ruling on a summary judgment motion. Dunlap v. Wayne, 105 Wash.2d 529, 535, 716 P.2d 842 (1986). Declarations must be made on personal knowledge, set forth facts that would be admissible in evidence, and show the affiant is competent to testify on the matter. CR 56(e). The Association challenged Mr. Meagher's affidavit on four grounds.
¶ 10 First, the Association claimed paragraphs 11 and 17-20 of the affidavit contained inadmissible extrinsic evidence. Extrinsic evidence is admissible as to the circumstances under which a contract was made in an attempt to interpret the parties' intent and to determine the meaning of the terms of the contract. Berg v. Hudesman, 115 Wash.2d 657, 667, 801 P.2d 222 (1990). Such evidence, however, cannot be used to add, modify, or contradict the terms of the contract. Id. at 669, 801 P.2d 222.
¶ 11 The Association argued all five paragraphs contained evidence that contradicted the language contained in the Fairwood II Plat dedication and covenants. In these paragraphs, Mr. Meagher indicated it was never intended that Fairwood II would have a homeowners' association. This directly contradicts language from the plat dedication referring to a homeowners' association. The affidavit states that any language referring to a homeowners' association in the Fairwood II plat dedication was inadvertently included. This is precisely the type of evidence prohibited by Berg.
¶ 12 The Association claimed paragraphs 12, 15, and 20 of the affidavit contained improper legal conclusions. Courts will not consider legal conclusions in a motion for summary judgment. Keates v. City of Vancouver, 73 Wash.App. 257, 265, 869 P.2d 88, review denied, 124 Wash.2d 1026, 883 P.2d 327 (1994). The contested paragraphs discuss the authority of homeowners' associations, the rights of homeowners, the reason for the delay between the filing of the plat dedication and the covenants, and the reason a homeowners' association was mentioned in *1166 the plat dedication. These are all inadmissible legal conclusions and were properly stricken.
¶ 13 The Association asked that paragraphs 8 and 11 be stricken because they violated the dead man's statute, RCW 5.60.030, the purpose of which is to prevent interested parties from giving self-serving testimony about conversations or transactions with the deceased. McGugart v. Brumback, 77 Wash.2d 441, 444-45, 463 P.2d 140 (1969); Lasher v. Univ. of Wash., 91 Wash.App. 165, 169, 957 P.2d 229, review denied, 136 Wash.2d 1029, 972 P.2d 464 (1998). "A person is a party in interest . . . when he or she stands to gain or lose" by the operation and effect of the action or judgment in question. Bentzen v. Demmons, 68 Wash.App. 339, 344, 842 P.2d 1015 (1993). Because Mr. Meagher is not a party in interest, the dead man's statute does not apply to him. Paragraph 11 was already properly stricken because it contained inadmissible extrinsic evidence. There was no basis, however, to strike paragraph 8.
¶ 14 Finally, the Association contended paragraphs 13-16 and 19 should be stricken because each contained inadmissible hearsay. Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted." ER 801(c). The challenged paragraphs detail Mr. Meagher's understanding of why Fairwood I was developed differently than Fairwood II. He referred to reasons why potential buyers would not purchase property in Fairwood I and claimed those reasons were the cause for a change in development strategy. These statements were offered to prove the truth of the matter asserted and were properly excluded as hearsay.
¶ 15 The court properly struck the challenged paragraphs with the exception of paragraph 8, which was foundational only. Nothing contained in that paragraph affects any issue on appeal.
¶ 16 The Property Owners also appeal the summary dismissal of their claim that the amendment to the CCRs was invalid. We review summary judgment motions de novo. Ellis v. City of Seattle, 142 Wash.2d 450, 458, 13 P.3d 1065 (2000). Summary judgment is appropriate when there are no disputes of material fact and the issues presented can be resolved as a matter of law. Tri-City Constr. Council, Inc. v. Westfall, 127 Wash. App. 669, 674, 112 P.3d 558 (2005).
¶ 17 Amendments to covenants are permissible. Meresse v. Stelma, 100 Wash. App. 857, 865, 999 P.2d 1267 (2000); Shafer v. Bd. of Trustees of Sandy Hook Yacht Club Estates, Inc., 76 Wash.App. 267, 273, 883 P.2d 1387 (1994), review denied, 127 Wash.2d 1003, 898 P.2d 308 (1995). In order for an amendment to be valid, it must be adopted according to the procedures set up in the covenants and it must be consistent with the general plan of the development. Shafer, 76 Wash.App. at 273-74, 883 P.2d 1387. But an amendment may not create a new covenant that has no relation to the existing covenants. Meresse, 100 Wash.App. at 866, 999 P.2d 1267.
¶ 18 The 1998 amendment created the Association. The proper procedure was followed. At issue is whether the amendment was a change to the existing covenants rather than the addition of a new covenant.
¶ 19 The 1972 CCRs provided for architectural control of the subdivision and listed committee members who had the authority to approve or deny architectural changes. The CCRs specified proper use of the property in question, including the types of animals an owner could have and the types of signs that could be placed on property. They gave all property owners the right to enforce the covenants in a legal or equitable proceeding.
¶ 20 The 1998 CCRs created a homeowners' association to be in charge of enforcing the covenants. They gave the power and authority to the Board of the Association to give owners notice of problems and a procedure for dealing with these problems. The 1998 CCRs also created quarterly assessments.
¶ 21 The 1972 covenants put property owners on notice they had to comply with certain requirements or face legal action. The 1998 CCRs provide that they must comply with these requirements or face a fine or legal action. The 1998 amendments simply changed how violations of the covenants would be dealt with and placed quarterly *1167 assessments on the property. Because the 1969 plat dedication for Fairwood II referred to a homeowners' association and the restrictions on property owners were not significantly changed, the amendment creating the homeowners' association was proper.
¶ 22 Furthermore, the Property Owners ratified the 1998 covenants and thus are estopped from challenging them now. "A party ratifies an otherwise voidable contract if, after discovering facts that warrant rescission, [the party] remains silent or continues to accept the contract's benefits." Snohomish County v. Hawkins, 121 Wash. App. 505, 510-11, 89 P.3d 713 (2004), review denied, 153 Wash.2d 1009, 111 P.3d 1190 (2005). The party must act voluntarily and with full knowledge of the facts. Id. at 511, 89 P.3d 713.
¶ 23 It is undisputed that the Property Owners participated in the Association to varying degrees after it was created. All paid dues for over three years. Some served on the Board; others served on committees. Some submitted requests for property improvements to the Association for approval. All attended meetings in person or by proxy. The Property Owners clearly were aware of all the facts and accepted benefits from the Association. In these circumstances, they cannot now claim the Association lacks authority.
¶ 24 The Property Owners argue they did not ratify the Association because they did not know their participation would so bind them and they can disassociate themselves at any time. They had notice of the 1972 and 1998 CCRs and had full knowledge of all the relevant facts. Even if they can disassociate themselves at any time, the fact remains that they had a three-to-four year period of participation and acquiescence in the Association's authority. The Property Owners ratified the 1998 amendments and cannot challenge them now.
¶ 25 Affirmed.
WE CONCUR: SWEENEY, C.J., and BROWN, J.